IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Patrick L. Booker, | Case No. 8:12-cv-00985-HMH-JDA |
| Plaintiff, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| South Carolina Department of Social Services, Greenville County Sheriff's Office, Greenville County School District, Brandy P. Sullivan, Tammy Childs, Shawnee Peeples, and Kelly P. Karow, | |
| Defendants. | |

This matter is before the Court on a motion to remand filed by Plaintiff [Doc. 24] and a motion to dismiss filed by Defendant Greenville County School District [Doc. 27]. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and to submit findings and recommendations to the District Court.

Plaintiff, proceeding pro se, filed this action against the South Carolina Department of Social Services ("DSS"), the Greenville County Sheriff's Office ("GCSO"), the Greenville County School District ("GCSD"), Brandy P. Sullivan ("Sullivan"), Tammy Childs ("Childs"), Shawnee Peeples ("Peeples"), and Kelly P. Karow ("Karow"; collectively, "Defendants") in the Court of Common Pleas, McCormick County, South Carolina. [Doc. 2-1 at 7.] GCSD filed a motion to dismiss in state court, and Karow filed an answer and a motion to dismiss in state court. [Docs. 59-2; 59-3; 59-4.] Defendants removed the action to this Court on April 9, 2012. [Doc. 2.] On April 9, 2012, DSS, GCSO, Sullivan, Childs, and Peeples filed

their Answer. [Doc. 4.] On May 7, 2012, Plaintiff filed a motion to remand. [Doc. 24.] All Defendants but Karow filed responses in opposition on May 24, 2012. [Docs. 33, 34.] On May 9, 2012, GCSD filed a motion to dismiss. [Doc. 27.] Plaintiff filed a response in opposition on June 18, 2012 [Doc. 50], and GCSD filed a reply on June 28, 2012 [Doc. 55]. The motions are ripe for review.

## **BACKGROUND**[1]

Plaintiff is an inmate at the Broad River Correctional Institution ("Broad River"). [Doc. 2-1 at 2 ¶ A.] According to the Complaint, Mother[2] entered into an agreement with DSS where Mother's minor children were placed in the care of Mother's grandparents while Mother underwent drug counseling and parental classes.[3] [*Id.* at 4 ¶ 2.] On November 4, 2008, Sullivan became the caseworker assigned to Mother's case and noted in the file that Plaintiff was Daughter's father and was incarcerated in a prison facility in Greenville County. [*Id.* at 4 ¶ 4.] In January 2009, drug screenings revealed Mother and two of her children, Jason and Jill, were exposed to drugs but Daughter tested negative for any exposure to drugs. [*Id.* at 5 ¶ 5.] As a result, Mother entered into a new agreement DSS, with more restrictive visitation with her children.[4] [*Id.*] On February 6, 2009, Peeples, an investigator with GCSO, and Sullivan went to Mother's home, where they discovered

---

[1] The following background, forming the basis of Plaintiff's claims, is a summary of Plaintiff's allegations contained in the Complaint, which can be found at Docket Entry Number 2-1.

[2] Mother is the mother of Plaintiff's minor child, Daughter, and two other minor children, who are not Plaintiff's children. [Doc. 2-1 at 3–4 ¶ 1.] Plaintiff does not disclose Mother's name. [*Id.*]

[3] Child removal proceedings were not pursued, and Mother remained the legal custodian of her children during this time. [Doc. 2-1 at 4 ¶ 2.]

[4] Again, child removal proceedings were not pursued, and Mother remained the legal custodian. [Doc. 2-1 at 5 ¶ 5.]

Mother was in violation of her agreement with DSS because Jason and Jill were home with Mother but without the supervision of Mother's grandparents. [*Id.* at 5 ¶ 6.] Mother's grandparents arrived moments later. [*Id.*]

Peeples then "seized and emergency removed the two children in absence of a court-order, parental consent, or probable cause to believe the two children were under imminent and substantial danger." [*Id.* at 6 ¶ 11.] Instead, the children were taken into emergency custody because Peeples "felt uncomfortable with the situation." [*Id.*] Peeples then went to Stone Academy Elementary School, where Daughter attended, and demanded the school officials to relinquish their custody and care of Daughter to Peeples. [*Id.* at 6 ¶ 13.] The school officials relinquished their custody and care to Childs,[5] a DSS employee, without question and without being shown or given an arrest warrant, court order, or parental consent and without being told Mother or Daughter's caregiver had been arrested. [*Id.* at 7 ¶ 14.]

Plaintiff alleges GCSD had not promulgated or implemented any policy or procedure and otherwise failed to properly train and instruct its employees about what to do when a police officer asks a school official to relinquish custody of a child without a warrant, court order, or parental consent and without stating the child's parent or guardian has been arrested. [*Id.* at 7 ¶ 15.] Additionally, Plaintiff contends Peeples and Sullivan both knew there was no probable cause to believe any of Mother's minor children were in imminent and substantial danger at the time of their emergency removal, especially with respect to

---

[5]The Court notes Childs may be a scrivener's error in the Complaint because the other paragraphs discussing relinquishing custody and care appear to claim the school officials relinquished custody and care to Peeples, not Childs. [*See* Doc. 2-1 at 6 ¶ 13 (stating Peeples demanded school officials relinquish custody and care of Daughter), 7 ¶ 14 (stating school officials relinquished custody and care of Daughter to Peeples).]

3

Daughter who was "on government property in the tranquility of an elementary school at the time she was seized and emergency removed." [*Id.* at 7 ¶ 16.] Accordingly, Plaintiff asserts that, on the DSS form, Peeples and Sullivan intentionally and in bad faith selected the theory that the children had lost adult protection and supervision as the alleged basis for the emergency removal of the children even though Peeples and Sullivan knew the children were under adult protection and supervision at the time of their emergency removal. [*Id.* at 7–8 ¶ 17.] Additionally, Plaintiff alleges Sullivan verified a petition for removal of the children, wherein she wilfully and in bad faith swore under oath to the following misrepresentations: that Daughter was found at Mother's residence and that Plaintiff's address and location was unknown to DSS. [*Id.* at 8 ¶ 20.] Plaintiff further contends Sullivan and DSS wilfully and in bad faith refused or failed to make a reasonable effort to promptly notify Plaintiff of the emergency removal of Daughter or that a removal proceeding had been initiated, including the date and time of the probable cause hearing, even though Sullivan and DSS knew Plaintiff was named as a party-defendant to the removal petition. [*Id.* at 8–9 ¶ 21.] As a result, Plaintiff was unaware of the removal proceeding and the date and time of the probable cause hearing and, therefore, was unable to attend the hearing. [*Id.* at 9 ¶ 23.]

Plaintiff further asserts Sullivan and Peeples made the following misrepresentations at the probable cause hearing: that Daughter was found at Mother's home without the supervision of her caregiver and that Daughter was still testing positive for cocaine. [*Id.* at 9–10 ¶ 24.] Although a guardian ad litem was at the probable cause hearing on behalf of Daughter, the guardian ad litem was appointed the morning of the hearing with only ten

4

minutes to prepare. [*Id.* at 10 ¶ 25.] Additionally, Mother had no legal counsel at the hearing, and there was no opposition to DSS's assertion of probable cause. [*Id.*] Plaintiff alleges DSS wilfully and in bad faith refused or failed to contact Plaintiff to obtain information about Daughter's relatives on Plaintiff's side of the family after the family court ordered DSS to consider placement with relatives. [*Id.* at 10 ¶ 27.]

Plaintiff did not learn about Daughter's emergency removal or that she was in DSS's custody until March 10, 2009, when he was taken to family court for a merits hearing on DSS's removal petition. [*Id.* at 10 ¶ 28.] Not long after learning DSS had custody of Daughter, Plaintiff sent a letter to Childs, requesting medical and dental records and to be provided contact information. [*Id.* at 16 ¶ 43.] Plaintiff also enclosed visitation and telephone privilege forms and informed DSS he would arrange for prepayment of expenses incurred in accepting collect calls to Daughter and for any travel expenses associated with bringing Daughter to the prison facility for visitation. [*Id.*] Plaintiff alleges that, after receiving his letter, DSS, Childs, and another DSS employee, Emaline Burnette, wilfully and in bad faith refused or failed to allow Plaintiff access to the medical and dental records, refused to allow Plaintiff to write or call Daughter, and prohibited Daughter from being brought to the prison facility. [*Id.* at 17 ¶¶ 44–46.]

Plaintiff further contends DSS wilfully and in bad faith prepared and submitted to the family court a supplemental order for genetic testing wherein DSS stated Plaintiff had denied paternity of Daughter, even though DSS knew Plaintiff never denied paternity of Daughter. [*Id.* at 11 ¶ 32.] On April 17, 2009, Plaintiff was transported to the family courthouse for genetic testing and, while waiting, he was approached by Karow, who

advised Plaintiff she had been appointed to represent him in the DSS action. [*Id.* 12–13 ¶ 33.] Plaintiff provided Karow with information about relatives he believed would be willing to seek and obtain temporary custody of Daughter on his behalf. [*Id.* at 13 ¶ 34.] Plaintiff also informed Karow about his concerns with DSS, Sullivan, and Peeples' failure to notify him of the DSS investigation, removal proceeding, and probable cause hearing and about the misrepresentations that had been made in family court and asked Karow to promptly notify the family court about the misrepresentations and to file a motion to alter or amend the order finding probable cause and to file an appeal if the motion was denied. [*Id.* at 12–14 ¶ 35.] According to Plaintiff, Karow became visibly upset and angered, refused to notify the family court about the misrepresentations or to file a motion to alter or amend, and threatened to withdraw her representation of Plaintiff. [*Id.* at 14 ¶¶ 36–37.]

When he returned from family court, Plaintiff received legal mail, including a copy of the supplemental order for genetic testing, which stated Plaintiff had denied paternity of Daughter even though Plaintiff had never denied paternity. [*Id.* at 14–15 ¶ 38.] Plaintiff sent a letter to Karow, informing her of his discovery of this allegedly libelous statement and asking Karow to file a motion to alter or amend the libelous and/or offensive language from the record and to file an appeal if the motion was denied. [*Id.* at 15 ¶ 39.] Plaintiff followed the letter with a telephone call to Karow, reiterating his requests. [*Id.*] Plaintiff asserts Karow said she would take care of it but that Karow never did. [*Id.* at 15 ¶¶ 39–40.] Instead, Karow moved to be relieved as counsel without first notifying Plaintiff she was going to seek to withdraw her representation. [*Id.* at 15–16 ¶ 40.] On May 5, 2009, the family court relieved Karow as counsel. [*Id.* at 16 ¶ 42.]

6

In December 2009, Daughter was returned to Mother's full custody. [*Id.* at 18 ¶ 52.] Since then, Plaintiff's relationship and association with Daughter has been restored and resumed. [*Id.*] Plaintiff alleges Defendants' actions and inactions were in bad faith and "wicked, wilful, wanton, reckless, negligent, and/or grossly negligent," causing interference with Plaintiff's familial relationship with Daughter, denying Plaintiff's due process right to notice and an opportunity to be heard during the investigation and at the probable cause hearing, and otherwise causing Plaintiff to endure "significant and heightened levels of anxiety and depression, agitation, confusion, fear, diminished self-esteem, embarrassment, inconvenience, and loss of enjoyment of life." [*Id.* at 19 ¶ 49.] Accordingly, Plaintiff brings a cause of action against DSS, GCSO, and GCSD for negligence and/or gross negligence; against DSS, GCSO, Sullivan, Childs, and Peeples for violating Plaintiff's substantive due process "under South Carolina Constitution Article One, Section Three, and under the Fourteenth Amendment to the United States Constitution"; against DSS, Sullivan, and Childs for psychological abuse of a vulnerable adult; against DSS for libel; and against Karow for legal malpractice. [*Id.* at 19–20 ¶¶ 50–53.] Plaintiff seeks a jury trial on all issues triable by jury; actual damages against Defendants, jointly and severally; punitive and nominal damages; costs; and any additional relief the Court deems just and proper. [*Id.* at 20.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519,

7

520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under

color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct

9

of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Motion to Remand Standard**

A defendant may remove to federal district court any civil action brought in a state court of which the district courts of the United States have original jurisdiction. 28 U.S.C. § 1441(a). Further, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Id.* § 1367(a). The district court may decline to exercise supplemental jurisdiction over a claim if it "raises a novel or complex issue of State law"; if it "substantially predominates over the claim or claims over which the district court has original jurisdiction"; if "the district court has dismissed all claims over which it has original jurisdiction"; or "in exceptional circumstances, [where] there are other compelling reasons for declining jurisdiction." *Id.* § 1367(c). If a removed civil action includes a claim within the federal question jurisdiction of the district court as well as one or more claims not within the original or supplemental jurisdiction of the district court, the latter claims must be severed and remanded to state court. *Id.* § 1441(c).

**Motion to Dismiss Standard**

A motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle her to relief. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint

in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Further, on a motion pursuant to Rule 12(b)(6), if matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . .

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556)); *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (noting that court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader

wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

## **DISCUSSION**

**Motion to Remand**

In his motion to remand, Plaintiff does not appear to seek remand of his federal claim; instead, Plaintiff argues (1) the Court cannot exercise supplemental jurisdiction over his state law claims; (2) his federal claim is separate and independent of his state law claims; (3) removal of all claims would exceed the Court's jurisdiction under Article III of the Constitution; and (4) his state law claims predominate, requiring remand of the state law claims. [Doc. 24.] However, it appears that all claims asserted in Plaintiff's Complaint deal with the same case or controversy because all the claims arise from law enforcement taking emergency custody of Daughter at Stone Academy and failing to notify Plaintiff. Further, Plaintiff has identified no compelling reason why this Court should decline to exercise supplemental jurisdiction over all of his state law claims. Accordingly, Plaintiff's motion to remand should be denied.

**Motion to Dismiss**

In its motion to dismiss, GCSD argues (1) Plaintiff's claim against GCSD is barred by the statute of limitations and (2) Plaintiff's Complaint fails to state facts sufficient to constitute a cause of action for gross negligence against GCSD because it fails to state facts sufficient to constitute the existence of a legal duty owed by GCSD to Plaintiff or that GCSD's alleged actions actually or proximately caused Plaintiff any injury. [Doc. 27-2.]

The Court agrees Plaintiff's Complaint fails to state facts sufficient to constitute a cause of action for gross negligence against GCSD.[6]

Under the South Carolina Tort Claims Act ("SCTCA"), a governmental entity is not liable for loss resulting from "responsibility or duty including but not limited to supervision, protection, control, confinement or custody of any student . . . except when the responsibility or duty is exercised in a grossly negligent manner." S.C. Code Ann. § 15-78-60(25). Gross negligence is "the intentional, conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do." *Richardson v. Hambright*, 374 S.E.2d 296, 298 (S.C. 1988) (citing *Ford v. Atl.*

---

[6]The Court declines to recommend dismissal based on GCSD's statute of limitations argument. Section 15-78-110 of the South Carolina Tort Claims Act ("SCTCA") provides,

> Except as provided for in Section 15-3-40, any action brought pursuant to this chapter is forever barred unless an action is commenced within two years after the date the loss was or should have been discovered; provided, that if the claimant first filed a claim pursuant to this chapter then the action for damages based upon the same occurrence is forever barred unless the action is commenced within three years of the date the loss was or should have been discovered.

A three-year statute of limitations is available to a party who files a "verified claim." *See* S.C. Code Ann. § 15-78-80. GCSD concedes Plaintiff filed a verified claim with GCSD on January 29, 2010. [Doc. 27-2 at 2.] Accordingly, the three-year statute of limitations applies in this case.

Plaintiff filed this action in state court on February 27, 2012. [Doc. 2-1.] Therefore, only the claims asserted by Plaintiff that were or should have been discovered on or after February 27, 2009 are timely and not barred by the statute of limitations. The factual allegations in the Complaint directed at GCSD occurred on February 6, 2009. [*Id.* at 6–7 ¶¶ 13–15.] Thus, the claims appear to be barred by the statute of limitations. However, Plaintiff argues he did not discover Daughter was in DSS custody until March 10, 2009 [*id.* at 10 ¶ 28] because he was housed in the Special Management Unit ("SMU") in solitary confinement from about January 22, 2009 through April 22, 2009 [Doc. 50 at 4–5].

"Under the discovery rule, the statutory limitations period begins to run from the date when the injury resulting from the wrongful conduct either is discovered or may be discovered by the exercise of reasonable diligence." *Gillman v. City of Beaufort*, 627 S.E.2d 746, 748 (S.C. Ct. App. 2006) (citing *Cline v. J.E. Faulkner Homes, Inc.*, 597 S.E.2d 27, 29 (S.C. Ct. App. 2004)). Although GCSD cites precedent for the proposition that incarceration does not toll a statute of limitations [Doc. 27-2 at 4], it fails to provide support for the proposition that an incarcerated inmate housed in SMU may have discovered by the exercise of reasonable diligence his minor child was taken into DSS custody while in SMU. Because the Court concludes GCSD's motion to dismiss should be granted because Plaintiff's Complaint fails to state facts sufficient to constitute a cause of action for gross negligence against GCSD, the Court declines to recommend dismissal based on GCSD's statute of limitations argument.

13

*Coast Line R.R. Co.*, 168 S.E. 143 (S.C. 1932)). Negligence is the failure to exercise due care, while gross negligence is the failure to exercise slight care. *See Hart v. Doe*, 198 S.E.2d 526, 529 (S.C. 1973); *Hollins v. Richland Cnty. Sch. Dist.*, 427 S.E.2d 654, 656 (S.C. 1993). To establish a gross negligence claim, a plaintiff must show that: (1) the defendant owed him a duty; (2) the defendant breached that duty by failing to exercise a slight degree of care; (3) the plaintiff was injured; and (4) the defendant's breach of duty proximately caused the injury. *See Rice v. Sch. Dist. of Fairfield*, 452 S.E.2d 352, 355 (S.C. Ct. App. 1994).

Negligence ordinarily is a mixed question of law and fact. *Rogers v. Atl. Coast Line R.R. Co.*, 71 S.E.2d 585, 587 (S.C. 1952). When the evidence supports but one reasonable inference, however, the question becomes a matter of law for the court. *Foster v. S.C. Dep't of Highways & Pub. Transp.*, 413 S.E.2d 31, 34 (S.C. 1992).

As stated above, GCSD argues Plaintiff has failed to state facts sufficient to constitute the existence of a legal duty owed by GCSD to Plaintiff. In *Cockrell v. Lexington County School District One*, the Honorable Cameron McGowan Currie held that, although a school district has a duty to supervise its students while they are in school, the plaintiffs had not pled sufficient facts to establish the school district owed a student's father a duty of care. No. 3:11-cv-2042-CMC, 2011 WL 5554811, at *5 & n.9 (D.S.C. Nov. 15, 2011). Similarly, here, Plaintiff has failed to plead sufficient facts to establish GCSD owed Plaintiff, as Daughter's parent, a duty of care and, accordingly, has failed to plead facts to support a claim that GCSD "intentional[ly], conscious[ly] fail[ed] to do something which it is

14

incumbent upon [GCSD] to do."[7] *See Richardson*, 374 S.E.2d at 298. To the extent Plaintiff alleges South Carolina's emergency protective custody statute establishes GCSD owed Plaintiff, as Daughter's parent, a duty of care, or establishes GCSD had a duty to investigate and/or question the emergency removal before relinquishing custody of Daughter [*see* Doc. 2-1 at 7 ¶ 14 (stating school officials relinquished their custody and care without question and without being shown or given an arrest warrant, court order, or parental consent and without being told Mother or Daughter's caregiver had been arrested)], the statute specifically provides "[a] law enforcement officer may take emergency protective custody of a child *without the consent* of the child's parents, guardians, or others exercising temporary or permanent control over the child . . . ." S.C. Code Ann. § 63-7-620(A) (emphasis added). Accordingly, nothing in the emergency protective custody statute establishes GCSD had any duty to require Peeples to show an arrest warrant, court order, or parental consent or otherwise verify law enforcement had complied with its duties under S.C. Code Ann. § 63-7-620(A), and Plaintiff has failed to plead sufficient facts to establish GCSD had a duty under the statute to verify law enforcement was in compliance with the emergency protective custody statute.

---

[7] Plaintiff argues *Doe v. Greenville County School District*, 651 S.E.2d 305 (S.C. 2007), establishes that a school district owes a duty of care to parents of a student under common law. [Doc. 50 at 7–8.] However, a review of *Doe* establishes only that South Carolina statutes provide that a school district has a duty to supervise a student and may be found liable for negligent supervision of the student only if that duty is executed in a grossly negligent manner. 651 S.E.2d at 309–10. As previously stated, although GCSD has a duty to supervise its students while they are in school, Plaintiff has not pled sufficient facts to establish GCSD owed Plaintiff, as a student's father, a duty of care. *See Cockrell*, 2011 WL 5554811, at *5 & n.9. Accordingly, the Court declines to certify a question to the Supreme Court of South Carolina, as Plaintiff requests [*see* Doc. 50 at 8].

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Plaintiff's motion to remand be DENIED and GCSD's motion to dismiss be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>United States Magistrate Judge

August 22, 2012
Greenville, South Carolina