IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Patrick L. Booker, | Case No. 8:12-cv-00985-TMC-JDA |
| Plaintiff, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| South Carolina Department of Social Services, Greenville County Sheriff's Office, Brandy P. Sullivan, Tammy Childs, Shawnee Peeples, and Kelly P. Karow, | |
| Defendants. | |

This matter is before the Court on a motion to dismiss filed by Defendant Kelly Karow ("Karow") [Doc. 77]; a motion to dismiss filed by Defendants Tammy Childs ("Childs"), Greenville County Sheriff's Office ("GCSO"), Shawnee Peeples ("Peeples"), South Carolina Department of Social Services ("SCDSS"), and Brandy P. Sullivan ("Sullivan") [Doc. 88]; a motion for summary judgment filed by Defendants Childs, GCSO, Peeples, SCDSS, and Sullivan [Doc. 89]; and a motion to expedite ruling filed by Plaintiff [Doc. 108]. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff, proceeding pro se, filed this action against SCDSS, GCSO, Greenville County School District ("GCSD"),[1] Sullivan, Childs, Peeples, and Karow (collectively, "Defendants") in the Court of Common Pleas, McCormick County, South Carolina. [Doc. 2-1.] Defendants removed the action to this Court on April 9, 2012. [Doc. 2.] On

---

[1] GCSD was dismissed from the case on September 11, 2012. [Doc. 74.]

September 14, 2012, Defendant Karow filed a motion to dismiss. [Doc. 77.] On September 17, 2012, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment/dismissal procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 78.] Plaintiff filed a response in opposition to Karow's motion on September 24, 2012 [Doc. 84], and Karow filed a reply on October 4, 2012 [Doc. 92].

On September 28, 2012, Defendants Childs, GCSO, Peeples, SCDSS, and Sullivan filed a motion to dismiss [Doc. 88] and a motion for summary judgment [Doc. 89]. On the same day, the Court filed an Order pursuant to *Roseboro*, 528 F.2d 309, again advising Plaintiff of the summary judgment/dismissal procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 90.] Plaintiff filed a response in opposition to the motions on October 26, 2012 [Doc. 98], and Childs, GCSO, Peeples, SCDSS, and Sullivan filed a reply on November 5, 2012 [Doc. 100]. Plaintiff filed a sur-reply on November 15, 2012.[2] [Doc. 101.] On May 2, 2013, the Court received a letter from Plaintiff requesting a ruling on the pending motions. [Doc. 108.] The motions are ripe for review.

---

[2]Plaintiff asks the Court to strike the reply filed by Childs, GCSO, Peeples, SCDSS, and Sullivan, arguing the reply was untimely filed. [Doc. 100.] Plaintiff's response in opposition was filed October 26, 2012. [Doc. 98]. Replies to matters initially raised in a response to a motion are due within seven days after service of the response. Local Civil Rule 7.07, D.S.C. Childs, GCSO, Peeples, SCDSS, and Sullivan filed their reply on November 5, 2012, three days late. [Doc. 100.] Plaintiff, however, was not prejudiced by the three day delay in filing and filed a sur-reply on November 15, 2012, which the Court docketed and considered. [Doc. 101.] Because the Court finds Plaintiff was not prejudiced by the three day delay in filing and was allowed to file a sur-reply, the Court denies Plaintiff's request to strike the reply.

2

**BACKGROUND**[3]

Plaintiff is an inmate at the Broad River Correctional Institution ("Broad River"). [Doc. 2-1 at 2 ¶ A.] According to the Complaint, Mother[4] entered into an agreement with SCDSS where Mother's minor children were placed in the care of Mother's grandparents while Mother underwent drug counseling and parental classes.[5] [*Id.* at 4 ¶ 2.] On November 4, 2008, Sullivan became the caseworker assigned to Mother's case and noted in the file that Plaintiff was Daughter's father and was incarcerated in a prison facility in Greenville County. [*Id.* at 4 ¶ 4.] In January 2009, drug screenings revealed Mother and two of her children, Jason and Jill, were exposed to drugs but Daughter tested negative for any exposure to drugs. [*Id.* at 5 ¶ 5.] As a result, Mother entered into a new agreement with SCDSS, with more restrictive visitation with her children.[6] [*Id.*] On February 6, 2009, Peeples, an investigator with GCSO, and Sullivan went to Mother's home, where they discovered Mother was in violation of her agreement with SCDSS because Jason and Jill were home with Mother but without the supervision of Mother's grandparents. [*Id.* at 5 ¶ 6.] Mother's grandparents arrived moments later. [*Id.*]

Peeples then "seized and emergency removed the two children in absence of a court-order, parental consent, or probable cause to believe the two children were under

---

[3] The following background, forming the basis of Plaintiff's claims, is a summary of Plaintiff's allegations contained in the Complaint, which can be found at Docket Entry Number 2-1.

[4] Mother is the mother of Plaintiff's minor child ("Daughter"), and two other minor children, who are not Plaintiff's children. [Doc. 2-1 at 3–4 ¶ 1.] Plaintiff does not disclose Mother's name. [*Id.*]

[5] Child removal proceedings were not pursued, and Mother remained the legal custodian of her children during this time. [Doc. 2-1 at 4 ¶ 2.]

[6] Again, child removal proceedings were not pursued, and Mother remained the legal custodian. [Doc. 2-1 at 5 ¶ 5.]

3

imminent and substantial danger." [*Id.* at 6 ¶ 11.] Instead, the children were taken into emergency custody because Peeples "felt uncomfortable with the situation." [*Id.*] Peeples then went to Stone Academy Elementary School, where Daughter attended, and demanded the school officials to relinquish their custody and care of Daughter to Peeples. [*Id.* at 6 ¶ 13.] The school officials relinquished their custody and care to Childs,[7] a SCDSS employee, without question and without being shown or given an arrest warrant, court order, or parental consent and without being told Mother or Daughter's caregiver had been arrested. [*Id.* at 7 ¶ 14.]

Plaintiff contends Peeples and Sullivan both knew there was no probable cause to believe any of Mother's minor children were in imminent and substantial danger at the time of their emergency removal, especially with respect to Daughter who was "on government property in the tranquility of an elementary school at the time she was seized and emergency removed." [*Id.* at 7 ¶ 16.] Accordingly, Plaintiff asserts that, on the SCDSS form, Peeples and Sullivan intentionally and in bad faith selected the theory that the children had lost adult protection and supervision as the alleged basis for the emergency removal of the children even though Peeples and Sullivan knew the children were under adult protection and supervision at the time of their emergency removal. [*Id.* at 7–8 ¶ 17.] Additionally, Plaintiff alleges Sullivan verified a petition for removal of the children, wherein she wilfully and in bad faith swore under oath to the following misrepresentations: that Daughter was found at Mother's residence and that Plaintiff's address and location was

---

[7]The Court notes Childs may be a scrivener's error in the Complaint because the other paragraphs discussing relinquishing custody and care appear to claim the school officials relinquished custody and care to Peeples, not Childs. [*See* Doc. 2-1 at 6 ¶ 13 (stating Peeples demanded school officials relinquish custody and care of Daughter), 7 ¶ 14 (stating school officials relinquished custody and care of Daughter to Peeples).]

4

unknown to SCDSS. [*Id.* at 8 ¶ 20.] Plaintiff further contends Sullivan and SCDSS wilfully and in bad faith refused or failed to make a reasonable effort to promptly notify Plaintiff of the emergency removal of Daughter or that a removal proceeding had been initiated, including the date and time of the probable cause hearing, even though Sullivan and SCDSS knew Plaintiff was named as a party-defendant to the removal petition. [*Id.* at 8–9 ¶ 21.] As a result, Plaintiff was unaware of the removal proceeding and the date and time of the probable cause hearing and, therefore, was unable to attend the hearing. [*Id.* at 9 ¶ 23.]

Plaintiff further asserts Sullivan and Peeples made the following misrepresentations at the probable cause hearing: that Daughter was found at Mother's home without the supervision of her caregiver and that Daughter was still testing positive for cocaine. [*Id.* at 9–10 ¶ 24.] Although a guardian ad litem was at the probable cause hearing on behalf of Daughter, the guardian ad litem was appointed the morning of the hearing with only ten minutes to prepare. [*Id.* at 10 ¶ 25.] Additionally, Mother had no legal counsel at the hearing, and there was no opposition to SCDSS's assertion of probable cause. [*Id.*] Plaintiff alleges SCDSS wilfully and in bad faith refused or failed to contact Plaintiff to obtain information about Daughter's relatives on Plaintiff's side of the family after the family court ordered SCDSS to consider placement with relatives. [*Id.* at 10 ¶ 27.]

Plaintiff did not learn about Daughter's emergency removal or that she was in SCDSS's custody until March 10, 2009, when he was taken to family court for a merits hearing on SCDSS's removal petition. [*Id.* at 10 ¶ 28.] Not long after learning SCDSS had custody of Daughter, Plaintiff sent a letter to Childs, requesting medical and dental records

5

and to be provided contact information.  [*Id.* at 16 ¶ 43.]  Plaintiff also enclosed visitation and telephone privilege forms and informed SCDSS he would arrange for prepayment of expenses incurred in accepting collect calls to Daughter and for any travel expenses associated with bringing Daughter to the prison facility for visitation.  [*Id.*]  Plaintiff alleges that, after receiving his letter, SCDSS, Childs, and another SCDSS employee, Emaline Burnette, wilfully and in bad faith refused or failed to allow Plaintiff access to the medical and dental records, refused to allow Plaintiff to write or call Daughter, and prohibited Daughter from being brought to the prison facility.  [*Id.* at 17 ¶¶ 44–46.]

Plaintiff further contends SCDSS wilfully and in bad faith prepared and submitted to the family court a supplemental order for genetic testing wherein SCDSS stated Plaintiff had denied paternity of Daughter, even though SCDSS knew Plaintiff never denied paternity of Daughter.  [*Id.* at 11 ¶ 32.]  On April 17, 2009, Plaintiff was transported to the family courthouse for genetic testing and, while waiting, he was approached by Karow, who advised Plaintiff she had been appointed to represent him in the SCDSS action.  [*Id.* 12–13 ¶ 33.]  Plaintiff provided Karow with information about relatives he believed would be willing to seek and obtain temporary custody of Daughter on his behalf.  [*Id.* at 13 ¶ 34.]  Plaintiff also informed Karow about his concerns with SCDSS, Sullivan, and Peeples' failure to notify him of the SCDSS investigation, removal proceeding, and probable cause hearing and about the misrepresentations that had been made in family court and asked Karow to promptly notify the family court about the misrepresentations and to file a motion to alter or amend the order finding probable cause and to file an appeal if the motion was denied.  [*Id.* at 12–14 ¶ 35.]  According to Plaintiff, Karow became visibly upset and angered,

refused to notify the family court about the misrepresentations or to file a motion to alter or amend, and threatened to withdraw her representation of Plaintiff. [*Id.* at 14 ¶¶ 36–37.]

When he returned from family court, Plaintiff received legal mail, including a copy of the supplemental order for genetic testing, which stated Plaintiff had denied paternity of Daughter even though Plaintiff had never denied paternity. [*Id.* at 14–15 ¶ 38.] Plaintiff sent a letter to Karow, informing her of his discovery of this allegedly libelous statement and asking Karow to file a motion to alter or amend the libelous and/or offensive language from the record and to file an appeal if the motion was denied. [*Id.* at 15 ¶ 39.] Plaintiff followed the letter with a telephone call to Karow, reiterating his requests. [*Id.*] Plaintiff asserts Karow said she would take care of it but that Karow never did. [*Id.* at 15 ¶¶ 39–40.] Instead, Karow moved to be relieved as counsel without first notifying Plaintiff she was going to seek to withdraw her representation. [*Id.* at 15–16 ¶ 40.] On May 5, 2009, the family court relieved Karow as counsel. [*Id.* at 16 ¶ 42.]

In December 2009, Daughter was returned to Mother's full custody. [*Id.* at 18 ¶ 52.] Since then, Plaintiff's relationship and association with Daughter has been restored and resumed. [*Id.*] Plaintiff alleges Defendants' actions and inactions were in bad faith and "wicked, wilful, wanton, reckless, negligent, and/or grossly negligent," causing interference with Plaintiff's familial relationship with Daughter, denying Plaintiff's due process right to notice and an opportunity to be heard during the investigation and at the probable cause hearing, and otherwise causing Plaintiff to endure "significant and heightened levels of anxiety and depression, agitation, confusion, fear, diminished self-esteem, embarrassment, inconvenience, and loss of enjoyment of life." [*Id.* at 19 ¶ 49.] Plaintiff brings a cause of

7

action against SCDSS and GCSO for negligence and/or gross negligence[8]; against SCDSS, GCSO, Sullivan, Childs, and Peeples for violating Plaintiff's substantive and procedural due process "under South Carolina Constitution Article One, Section Three, and under the Fourteenth Amendment to the United States Constitution"; against SCDSS, Sullivan, and Childs for psychological abuse of a vulnerable adult; against SCDSS for libel; and against Karow for legal malpractice. [*Id.* at 19–20 ¶¶ 50–53.] Plaintiff seeks a jury trial on all issues triable by jury; actual damages against Defendants, jointly and severally; punitive and nominal damages; costs; and any additional relief the Court deems just and proper. [*Id.* at 20.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).

---

[8]This claim was also brought against GCSD but, as previously stated, GCSD was dismissed from the case on September 11, 2012. [Doc. 74.]

8

Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Motion to Dismiss Standard**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support [his] claim and would entitle [him] to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*,

7 F.3d 1130, 1134 (4th Cir. 1993). In addition to the complaint, the court "may consider documents attached to the complaint . . . so long as they are integral to the complaint and authentic." *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir 2007) (citing Fed. R. Civ. P. 10(c)).

With respect to well-pleaded allegations, the Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . .

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556)); *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (noting that court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355,

365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Voluntary Dismissal of Claims and Defendants**

In his response in opposition to the motion to dismiss and motion for summary judgment filed by Childs, GCSO, Peeples, SCDSS, and Sullivan, Plaintiff indicates he "withdraw[s] his allegations and any of his claims or causes of action against the GCSO, Ms. Peeples, and Ms. Sullivan, or stated otherwise, Plaintiff hereby consent[s] to dismiss with prejudice this action as to GSCO, Ms. Peeples and Ms. Sullivan." [Doc. 98 at 2.]

Further, Plaintiff indicates he "withdraw[s] his psychological abuse of a vulnerable adult claim." [*Id.* at 23.] Accordingly, the Court recommends Defendants GSCO, Peeples, and Sullivan be dismissed and that Plaintiff's psychological abuse of a vulnerable adult claim be dismissed.[9]

**Motions Filed by Childs and SCDSS[10]**

In their motion for summary judgment, Childs and SCDSS argue (1) the actions alleged in Plaintiff's complaint do not give rise to a constitutional violation of Plaintiff's rights to procedural due process; (2) the allegations in Plaintiff's complaint do not rise to the level of a constitutional deprivation of his substantive due process rights; (3) Childs is entitled to absolute immunity for the alleged misstatements in the removal petition and at the removal hearing; (4) Childs and SCDSS are entitled to qualified immunity; (5) Childs and SCDSS cannot be held liable solely based on respondeat superior; (6) Childs and SCDSS cannot be held liable based on a theory of supervisor liability; (7) Plaintiff has no cognizable claims based on state law; (8) to the extent Plaintiff alleges claims based on state law, Childs is not a proper party to the action; (9) and Plaintiff's action against SCDSS

---

[9]Accordingly, the Court will address Plaintiff's remaining causes of action against SCDSS for negligence and/or gross negligence; against SCDSS and Childs for substantive and procedural due process violations; against SCDSS for libel; and against Karow for legal malpractice.

[10]As an initial matter, in both the motion to dismiss and the motion for summary judgment, Childs and SCDSS contend Plaintiff's action is barred by res judicata and/or collateral estoppel. However, Plaintiff's previous action was dismissed without prejudice and without issuance and service of process; thus, his claims have not been adjudicated. *See Dove v. CODESCO*, 569 F.2d 807, 809 n.3 (4th Cir. 1978) ("The general rule is that a dismissal without prejudice operates to leave the parties as if no action had been brought at all."); *Booker v. Sullivan*, No. 8:11-1131-HMH-JDA, 2011 WL 3704199 (D.S.C. Aug. 23, 2011) (previous case against Sullivan, Childs, Peeples, and GCSO that was dismissed without prejudice and without issuance and service of process). Because res judicata and collateral estoppel were the only arguments raised in the motion to dismiss filed by Childs and SCDSS, the Court recommends that the motion to dismiss be denied.

14

for libel is untimely and barred by the statute of limitations. [Doc. 89-1.] The Court agrees Childs and SCDSS are entitled to immunity in this action.

### *Immunity From Suit Under § 1983*

Plaintiff alleges Childs and SCDSS violated his substantive and procedural due process rights under the Fourteenth Amendment. [Doc. 2-1 at 18 ¶ 51.] However, Childs has absolute immunity from damages under § 1983 for her actions "that could be deemed prosecutorial." *Vosburg v. Dep't of Soc. Servs.*, 884 F.2d 133, 138 (4th Cir. 1989). The social worker's absolute immunity extends to liability resulting from the filing of a removal petition. *Id.* The *Vosburg* court relied primarily on two Supreme Court decisions. In *Imbler v. Pachtman*, 424 U.S. 409 (1976), the Supreme Court held that prosecutorial immunity is necessary to allow the prosecutor to exercise independent judgment without the fear or threat of § 1983 litigation. *Id.* at 424–26. In *Butz v. Economou*, 438 U.S. 478 (1978), the Supreme Court held that "[a]bsolute immunity is . . . necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Id.* at 512. Absolute immunity is designed to protect the judicial process. Although SCDSS case workers do not prosecute criminal cases, they have the responsibility to implement state laws to protect children. "[T]he filing of a removal petition is, in essence, the start of judicial proceedings against the parent or guardian of a minor child, and the duties of the social worker at that point are those of an advocate in that process." *Vosburg*, 884 F.2d at 137. Immunity from § 1983 liability also extends to the preparation and filing of a removal petition, even if false statements are submitted in support of emergency removal. *Gedrich v. Fairfax Cty. Dep't of Family Servs.*, 282 F. Supp.

2d 439, 467 (E.D. Va. 2003) (citing *Vosberg*, 884 F.2d at 135). Thus, because Childs' actions extend from her performing duties in her role as a social worker and are, thus, prosecutorial, Childs is entitled to absolute immunity.[11]

Moreover, SCDSS is protected from a § 1983 suit by the Eleventh Amendment, which forbids a federal court from rendering a judgment against an unconsenting state in favor of a citizen of that state. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *cf. Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997) (courts may consider an Eleventh Amendment immunity defense sua sponte). Although the language of the Eleventh Amendment does not explicitly prohibit a citizen of a state from suing his own state in federal court, the Supreme Court in *Hans v. Louisiana*, 134 U.S. 1 (1890), held that the purposes of the Eleventh Amendment would not be served if a state could be sued by its citizens in federal court. State agencies and state instrumentalities such as SCDSS share this immunity when they are the alter egos of the state. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *see also Pullings v. Jackson*, No. 2:07-0912-MBS, 2007 WL 1726528, at *3 (D.S.C. Jun. 13, 2007) (dismissing the Department of Social Services as a party defendant based on Eleventh Amendment immunity). Thus, SCDSS is protected by Eleventh Amendment immunity from Plaintiff's § 1983 claims.

---

[11] To the extent Plaintiff alleges his claims against Childs have nothing to do with activity that could be deemed prosecutorial [*see* Doc. 101 at 4–5 (arguing Plaintiff's suit against Childs has nothing to do with activity that could be deemed prosecutorial)], the Court disagrees. The allegations in the complaint about Childs extend from her performing duties in her role as a social worker related to the emergency removal of Daughter; accordingly, they are prosecutorial.

*State Law Claims*

Plaintiff's state law claims against SCDSS for negligence and/or gross negligence and for libel could be heard by this Court only through the exercise of supplemental jurisdiction, which allows federal courts to hear and decide state law claims along with federal law claims.[12]  Federal courts are permitted to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), however, if "the district court has dismissed all claims over which it has original jurisdiction."  Here, the Court recommends that the district judge decline to exercise supplemental jurisdiction in this case and remand the state law claims against SCDSS to state court, where Plaintiff originally filed this action.

**Motion to Dismiss Filed by Karow**

Plaintiff's state law claim against Karow for legal malpractice could also be heard by this Court only through the exercise of supplemental jurisdiction.  Here, the Court recommends that the district judge decline to exercise supplemental jurisdiction in this case and remand this claim to state court, where Plaintiff originally filed this action.[13]

---

[12] A civil action for Plaintiff's state law claims could be cognizable in this Court under the diversity statute, if that statute's requirements are satisfied.  However, this Court does not have diversity jurisdiction in this case because Plaintiff and Defendants are all citizens of the State of South Carolina, which defeats the required complete diversity of parties.  *See* 28 U.S.C. § 1332.

[13] To the extent Plaintiff's claim against Karow could be construed as one brought under § 1983, such claim fails.  An attorney, whether retained, court-appointed, or a public defender, does not act under color of state law, which is a jurisdictional prerequisite for any civil action brought under 42 U.S.C. § 1983.  *See Deas v. Potts*, 547 F.2d 800 (4th Cir. 1976) (private attorney); *Hall v. Quillen*, 631 F.2d 1154, 1155–56 & nn. 2–3 (4th Cir. 1980) (court-appointed attorney); *Polk County v. Dodson*, 454 U.S. 312, 317–24 & nn. 8–16 (1981) (public defender); *see also Lugar*, 457 U.S. at 936 ("Careful adherence to the 'state action' requirement . . . also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.").  Private conduct is outside the reach of a § 1983 action, as courts have found "merely private conduct, no matter how discriminatory or wrongful" is not actionable under § 1983.  *American Mfrs. Mut. Ins. Co.*, 526 U.S. at 50.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that GCSO, Peeples, and Sullivan be DISMISSED; Plaintiff's psychological abuse of a vulnerable adult claim be DISMISSED; the motion to dismiss filed by Childs and SCDSS be DENIED; and the motion for summary judgment filed by Childs and SCDSS be GRANTED.  Further, the Court recommends that the district judge decline to exercise supplemental jurisdiction in this case and remand the remaining state law claims against SCDSS and Karow to state court. Accordingly, because the Court recommends declining to exercise supplemental jurisdiction over the state law claim against Karow, the Court recommends the motion to dismiss filed by Karow be FOUND AS MOOT.  Additionally, the Court recommends the motion to expedite filed by Plaintiff be FOUND AS MOOT.

IT IS SO RECOMMENDED.


                                              s/ Jacquelyn D Austin
                                              United States Magistrate Judge

July 3, 2013
Greenville, South Carolina