IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Patrick L. Booker, #297590, ) | |
| ) | Civil Action No. 8:12-00985-TMC |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| South Carolina Department of ) | |
| Social Services; Greenville County ) | |
| Sheriff's Office; Brandy P. Sullivan; ) | |
| Tammy Childs; Shawnee Peeples; and ) | |
| Kelly P. Karow, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Multiple motions are currently before the court in this matter: (1) Kelly P. Karow's ("Karow") motion to dismiss (ECF No. 77); (2) a motion to dismiss by defendants South Carolina Department of Social Services ("SCDSS"), Greenville County Sheriff's Office ("GCSO"), Brandy P. Sullivan ("Sullivan"), Shawnee Peeples ("Peeples"), and Tammy Childs ("Childs") (ECF No. 88); (3) a motion for summary judgment by GCSO, SCDSS, Childs, Peeples, and Sullivan (ECF No. 89); and (4) the plaintiff, Patrick L. Booker's ("Booker") motion to expedite ruling (ECF No. 108).

Pursuant to 28 U.S.C. § 636(b) and District of South Carolina Local Civil Rule 73.02(B)(2), this case was referred to a magistrate judge for all pre-trial proceedings. This matter is now before this court on the magistrate judge's Report and Recommendation ("Report"), recommending that the court dismiss certain defendants and claims, deny Childs's and SCDSS's motion to dismiss; grant the motion for summary judgment; and find Booker's motion to expedite and Karow's motion to dismiss moot. (ECF No. 113.) Booker has filed

1

objections (ECF No. 115) and supplemental objections (ECF No. 117) to the Report and the defendants have responded to those objections (ECF Nos. 118, 119).

The court is charged with making a de novo determination of those portions of the Report to which a party specifically objects, and the court may accept, reject, or modify, in whole or in part, the magistrate judge's recommendation or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

## I. Background

This action arises out of an SCDSS investigation of the mother of Booker's child ("Mother"), eventual removal of the child from Mother's home, and SCDSS's subsequent interactions with Booker. Booker originally brought this action in state court, alleging causes of action for negligence, libel, legal malpractice, psychological abuse of a vulnerable adult, and Fourteenth Amendment procedural and substantive due process violations. The defendants timely removed the action to this court.

Throughout the course of the pleadings and motions, Booker has narrowed and clarified his claims to the following causes of action: (1) negligence by SCDSS and GCSO; (2) Fourteenth Amendment due process violations by SCDSS, GCSO, Sullivan, Childs, and Peeples; (3) libel by SCDSS; and (4) legal malpractice by Karow.[1]

At the time of the alleged events, Booker was incarcerated in the Broad River Correctional Institution. He has one daughter with Mother, who also has two other children. Mother had an agreement with SCDSS whereby her children were to stay with her grandparents and Mother was not to be alone with the children. On a visit to the home, Peeples, a GCSO

---

[1] The Report correctly states that Booker consented to voluntarily dismiss GCSO, Sullivan, and Peeples. However, in his supplemental objections to the Report (ECF No. 117) Booker withdraws that consent. Because the court did not enter an order dismissing those defendants, the parties did not file a stipulation of dismissal, and the language consenting to the dismissal appeared after the defendants had filed responsive motions, those defendants were never properly dismissed from the action and the court will address Booker's claims against them. *See* Fed. R. Civ. P. 41(a).

investigator, and Sullivan, Mother's SCDSS caseworker, found Mother in violation of the agreement.  Peeples took Mother's two children who were in the house into emergency protective custody and then went to Booker's daughter's school to retrieve her.  The same day, Sullivan and Peeples provided Mother and her grandparents with a notice of emergency custody actions, which stated the date, time, and location of the probable cause hearing.  Sullivan and Peeples did not, however, notify Booker of the investigation, removal, or the hearing.

At the probable cause hearing, Mother agreed that probable cause existed for the removal.  She and her two other children tested positive for exposure to cocaine, but Booker's daughter did not.  Booker alleges that Peeples submitted a report to the court falsely stating that Booker's daughter was found in Mother's home and that she tested positive for cocaine.

SCDSS did notify Booker of the subsequent merits hearing, which Booker attended.  At that hearing, SCDSS requested a paternity test from Booker.  According to Booker, he never denied paternity and agreed to submit to the test.  However, in its supplemental order for genetic tests, approved and adopted by the family court judge, SCDSS stated that Booker denied paternity.

 The family court appointed Karow as Booker's attorney in the SCDSS action. The two met once, right before a hearing, and she and Booker discussed his theory of the facts and his complaints against SCDSS, Peeples, and Sullivan for how they handled the removal, dealt with the court, and failed to keep Booker informed.  Booker asked Karow to alert the court to the false statements in Peeples's report and to strike the allegedly libelous statement in the court's order for genetic testing.  Later, Karow moved to be removed as counsel, allegedly without notifying Booker.  The court granted her motion and Booker received replacement counsel.

After Booker learned that SCDSS had custody of his daughter, he wrote to another SCDSS employee, Childs, and requested copies of his daughter's medical and dental records and her contact information. Booker also enclosed forms so that his daughter could visit or call him in prison and advised Childs that he would pay any associated costs. SCDSS, through Childs, refused Booker's requests, effectively denying him access to his daughter for the time she was in SCDSS custody. Booker also alleges that nobody from SCDSS considered placing his daughter with his relatives, even though several would have taken her in.

SCDSS returned Booker's daughter to Mother's custody less than a year later, and she and Booker have resumed their relationship. Booker is seeking a jury trial, actual, punitive, and nominal damages, and costs.

## II. Legal Standard

### a. Motion to Dismiss

Under the federal rules, each pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim should be dismissed when the complaint fails to allege facts upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the pleading standard . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Thus, the rules require more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* at 678.

In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). And, for a claim to have facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

### b. Summary Judgment

Summary judgment is appropriate if, after reviewing the entire record in a case, the court is satisfied that no genuine issues of material fact exist and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248 (1986). Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under the governing substantive law. *Id.*

### c. 42 U.S.C. § 1983

Here, Booker alleges constitutional violations by state actors. Accordingly, the court reads his complaint in light of the only statute allowing such claims – 42 U.S.C. § 1983. To establish a claim under § 1983, the plaintiff must show that the defendant (1) "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) did so "under color of [state] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (internal citations omitted).

### III. Discussion

### a. GCSO

Under § 1983, a municipal entity's liability must be based on: (1) an express municipal policy, such as an ordinance, regulation, or policy statement; (2) a "widespread practice that,

5

although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute custom or usage' with the force of law"; or (3) the decision of a person with "final policymaking authority." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 127 (1988); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986).

Booker has not alleged facts to support any of these bases of liability and, therefore, has not stated a viable claim against GCSO under § 1983.

**b. SCDSS**

Generally, states and their entities are entitled to Eleventh Amendment immunity from suit in federal court. However, when a state entity removes a case from state court to federal court, it waives its Eleventh Amendment Immunity. *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002). Even so, § 1983 only authorizes claims against "persons" acting under color of state law and "persons" does not include states or their entities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Thus, SCDSS is not a proper defendant for Booker's constitutional claims under § 1983.

**c. Sullivan and Childs**

While § 1983 permits actions against state actors, to allow those actors to continue to work efficiently and without constant fear of suit, the law has crafted certain immunities for them. In particular, qualified immunity shields public officials from personal liability for performance of their official duties, provided they do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In assessing qualified immunity, a court considers "whether the rights allegedly violated by the public official were clearly established at the time of the challenged conduct and whether such conduct was objectively reasonable." *Martin v. Saint Mary's Dept.*

*Soc. Servs.*, 346 F.3d 502, 505 (4th Cir. 2003) (internal citations omitted). "As such, if there is a 'legitimate question' as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity." *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994).

In addition, certain state actors, including social workers, while acting in a prosecutorial role, are entitled to absolute immunity. *See Vosburg v. Dep't of Soc. Servs.*, 884 F.2d 133, 135 (4th Cir. 1989). However, that immunity does not extend to their administrative or investigative activities. *Id*. at 138.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." The Supreme Court has long held that this clause "guarantees more than fair process." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997). It also "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Id.* at 720.

The Supreme Court has firmly established a parent's fundamental right "to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). However, that right is not absolute. "A state has a legitimate interest in protecting children from neglect and abuse and in investigating situations that may give rise to such neglect and abuse. Because of the complicated balance between parents' rights to raise their children and a State's interest in protecting its minor citizens, the right to familial integrity is 'amorphous' in many cases." *Martin*, 346 F.3d at 506 (internal citations omitted).

In this case, Booker's allegations against Sullivan focus on her prosecutorial role – filing an allegedly inaccurate DSS form and petition for removal. (*See* ECF No. 2-1, pp. 6-9.) Sullivan is entitled to absolute immunity for these claims. Booker also alleges a violation of his procedural due process rights for failing to inform him of the date, time, and location of the

7

probable cause hearing.  However, Booker does not cite any authority evidencing a noncustodial, incarcerated parent's right to notice of a probable cause hearing.  In fact, with regard to removal proceedings not seeking to terminate the noncustodial parent's parental rights, the South Carolina Code provides only that "the [SCDSS] shall exercise every reasonable effort to promptly notify the noncustodial parent that a removal proceeding has been initiated and of the date and time of any hearings scheduled."  S.C. Code Ann. § 63-7-700(B)(1).  SCDSS must balance this against the statutory mandate to hold a probable cause hearing within seventy-two hours of an emergency removal.  *See* S.C. Code Ann. § 63-7-710.  These statutes do not entitle Booker to any more notice than he received and Sullivan's alleged delay in informing Booker of the removal proceedings does not rise to the level of a constitutional violation actionable under § 1983.

Booker's claims against Childs are slightly more complicated.  Booker alleges that her denial of his requests for access to his child's medical records and contact information clearly constitutes an interference with his parental rights.  Specifically, Booker claims that he had a constitutionally protected liberty interest in his right to communicate and visit with his daughter, even when she was in state custody.  (*See* ECF No. 98, pp. 14-15.)  Contrary to the Report's interpretation, these allegations do not relate to Childs's prosecutorial role, but instead to her role as a temporary custodial caretaker.

The rights of a natural, noncustodial parent against those of the state as custodial caretaker is an interesting, although, unfortunately for Booker, not entirely settled area of the law.  For instance, Booker points the court to *Winston v. Children & Youth Servs. of Del. Cnty.*, 748 F. Supp. 1128 (E.D. Pa. 1990), for the proposition that a parent's "liberty interest in a relationship with [his] child continues when custody has temporarily been granted to the state."

8

*Id.* at 1134.  However, even that case suggests that "[o]nce it has been determined that the state is justified in removing a child from the home, it seems unlikely that the Due Process Clause requires the state to make substantial efforts to reunify the family," classifying increased visitations with the natural parents as 'substantial efforts,' and denying the parents' substantive due process claim.[2] *Id.*  And, in *Vosburg*, the most relevant case offered by the parties, the district court held that once the child was in state custody, the DSS workers became officers of the court and were entitled to absolute quasi-judicial immunity for their decisions. 884 F.2d at 135.[3]

Importantly, neither party has provided, nor has the court discovered, a case directly addressing visitation rights of a noncustodial, incarcerated parent.[4]  This added dimension further clouds an already amorphous liberty interest.  Based on judicial precedent and the unique facts presented, this court cannot conclude that Childs violated a clearly established constitutional right.  Accordingly, she is entitled to qualified immunity.

**d. Peeples**

Booker's claims against Peeples revolve around her role in investigating Mother, removing Booker's daughter, and filing a report.   These are, essentially, the same claims he asserts against Sullivan.  Thus, as to his procedural due process claim, the same analysis applies and the court finds that Peeples did not violate Booker's Fourteenth Amendment procedural due process rights.

---

[2] Also, the court notes that decisions from outside the controlling jurisdiction do not clearly establish federal law absent "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful."  *Wilson v. Layne*, 526 U.S. 603, 617 (1999).

[3] The parents did not appeal that portion of the district court's opinion, so the Fourth Circuit did not address the issue.

[4] *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (for federal law to be clearly established, there must be fairly close factual correspondence between the prior precedents and the case at hand).

In addition, the record does not indicate that Peeples violated Booker's substantive due process rights or otherwise interfered with his familial relations. Even accepting Booker's allegations as true, all Peeples did was follow up on an ongoing investigation, remove children with probable cause,[5] and file a report indicating her version of the events.[6] These actions do not violate any constitutional rights of which this court is aware, so Booker has not stated a claim against Peeples actionable under § 1983.

**e. State Law Claims**

Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if it has dismissed all of the claims over which it had original jurisdiction. The court's original jurisdiction over this matter arose from the federal questions presented by the plaintiff's Fourteenth Amendment claims. The plaintiff has not alleged jurisdiction because of diversity of citizenship. Accordingly, the plaintiff's remaining state law claims, including his legal malpractice claim against Karow, cannot stand alone in federal court and the court declines to exercise supplemental jurisdiction over them. Booker's remaining state law claims are, therefore, remanded to the Court of Common Pleas for McCormick County, South Carolina.

### IV. Conclusion

Accordingly, defendants' motion for summary judgment (ECF No. 89) is granted and Karow's motion to dismiss (ECF No. 77), defendants' motion to dismiss (ECF No. 88), and Booker's motion to expedite (ECF No. 108) are moot. All remaining state law claims are remanded to state court.

---

[5] Even Mother admitted at the probable cause hearing that Peeples and Sullivan had probable cause to remove the children – Mother and her grandmother both violated agreements with SCDSS, Mother and her two other children tested positive for exposure to cocaine, Mother's mother was a known drug user and Peeples and Sullivan smelled marijuana on her when she arrived at the house, and Mother had relocated to a high crime and drug neighborhood without notifying SCDSS. (*See* Peeples Supplemental Report ECF No. 89-2.)

[6] Booker alleges that Peeples misrepresented certain facts in her report. However, the defendants have provided an affidavit from Peeples stating otherwise and copies of the reports, which, contrary to Booker's assertions, accurately state that Booker's daughter was at school and that she tested negative drugs. (ECF No. 89-2.)

**IT IS SO ORDERED.**

s/Timothy M. Cain<br>United States District Court Judge

August 20, 2013
Anderson, South Carolina

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if applicable.

11